UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | | |
|---|---|---|---|
| DAVID W. GARNER, | ) | Case Nos.: | 1:09 CV 2314 |
| | ) | | 1:05 CR 44 |
| Petitioner | ) | | |
| | ) | | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. | |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent | ) | | |
| | ) | ORDER | |

This case is before the court on Petitioner David W. Garner's ("Petitioner" or "Garner") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Garner Mot.," 1:09 CV 2314, ECF No. 1). Also pending before the court is Petitioner's Motion for Default Judgment (1:05 CR 44, ECF No. 524). For the reasons stated herein, the court denies both of Petitioner's Motions.

**I. FACTUAL BACKGROUND**

The Sixth Circuit, in *United States v. Garner*, 273 F. App'x 487 (6th Cir. 2008), summarized the factual and procedural background as follows:

> I. Factual Background
> In 2003, the Cleveland Police Department, the Cuyahoga Metropolitan Housing Authority, and the Federal Bureau of Investigation began a long-term joint investigation to target drug trafficking in the Morris Black Estates ("Morris Black"), a housing development in Cleveland,

Ohio. While law enforcement relied on street sources, citizens, and victims of crime to aid their investigation, they also employed Charles Vaughn as a confidential informant to make controlled purchases of drugs. During the same time frame as the joint investigation, but outside of Morris Black, the Drug Enforcement Agency arrested Deonta Robinson, James Johnson, and Jermaine Green, who agreed to cooperate with the investigation.

Robinson and Johnson told law enforcement officers that twice a month the men jointly purchased half kilograms of powder cocaine. After purchase, Robinson cooked the powder cocaine into crack cocaine and then sold the crack cocaine in varying quantities. Through the cooperation of Robinson, Johnson, and Green, officers identified two buyers and sellers of crack cocaine as the Defendants.

II. Indictment and Trial
Garner and Carr were indicted for conspiracy to distribute narcotics and for distribution of various amounts of crack cocaine between August 2003 and December 2004. Fourteen other individuals, including Robinson, Johnson, and Green, were also indicted. All but three of the charged defendants pled guilty to the crimes as charged in the indictment.

At trial, the Government elicited testimony from various co-defendants, experts in narcotics, law enforcement officers, and Vaughn.

Sylvester Hudson was a co-defendant who testified that he bought drugs from Garner occasionally and sold drugs at a house in Morris Black, identified only in the trial testimony as "Lisa's House" (the "House"). Hudson also middled, a term that means Hudson served as a middleman between Garner and buyers, and witnessed these transactions, in exchange for which Garner paid Hudson with drugs. Hudson also purchased drugs from Garner. Hudson testified that both he and Carr used and sold drugs at the House. Hudson told the jury that he and Carr used drugs together and provided drugs to each other. In the fall of 2003 and into 2004, Hudson and Carr used and shared drugs every day. During this time, Hudson also saw Carr sell drugs, making sales daily either in the House or on the street. Carr also middled drugs, for which he received either drugs or cash as payment. Carr middled for co-defendants Kevin Taylor, Wayne Johnson, Garner and Hudson.

Robinson testified that between August 2003 and December 2004, he

sold drugs to Garner: two or three times in 2003, and two or three times in 2004. However, Robinson admitted that the quantities Garner purchased were what Robinson would consider personal use quantities (i.e., not large enough to distribute). Robinson testified that these sales took place in Morris Black. Robinson did testify that Carr middled for him "a couple of times" between August 2003 and December 2004. Robinson would also pay Carr with drugs for delivering messages for Robinson. Robinson sold Carr crack cocaine and witnessed Carr sell crack cocaine to co-defendant Hudson.

Green testified that he and Garner were friends, and Green sold Garner drugs once or twice between August 2003 and October 2004. Green sold Garner "eightballs" and "quarters," which are 6.5 to seven grams, and 200 grams, respectively. Green witnessed Garner sell drugs daily to people on the street in Morris Black. Green sold drugs to Carr three to four times per week. Carr also middled for Green "for months," bringing him either money or customers. Carr's deals were conducted throughout Morris Black.

Maurice Merritt testified that although he knew both of the Defendants, he did not see Garner engage in drug sales. Merritt did, however, testify to supplying Carr with crack cocaine "every other day," or two to three times per week. Carr also middled for Merritt, bringing him money and customers in exchange for drugs.

Detective Maurice Kennedy witnessed Garner make hand-to-hand transactions (money in exchange for suspected crack cocaine) five to six times. Kennedy also saw Garner use middlemen to run drugs and money and witnessed Carr make hand-to-hand transactions in Morris Black. Kennedy described seeing Carr exchange money for suspected crack cocaine.

Van Evans testified that he saw Carr buy drugs from co-conspirators David Sergeant, Wayne Johnson, Merritt, and Garner. Evans also testified that between August 2003 and February 2005, he sold Garner crack cocaine once or twice a month, in quantities of either seven or fourteen grams. These drug sales took place in Morris Black. Evans also saw Garner selling drugs around Morris Black and giving drugs to Carr.

Vaughn testified that an as [sic] undercover informant he purchased drugs from Garner on two occasions. He further testified that he purchased drugs from an individual for whom Carr middled. Vaughn

> also witnessed Carr pool drugs with two unindicted individuals in order to create a quantity sufficient to sell to Vaughn.
>
> III. Conviction and Sentencing
> Garner, Carr, and their co-defendant Kevin Taylor were convicted of conspiracy to distribute narcotics, as well as the substantive counts of distribution of crack cocaine. Following the trial, the district court sentenced both Garner and Carr to prison terms of 240 months.
>
> In January 2006, in an unrelated case, another district judge for the Northern District of Ohio sentenced Garner to seventy-two months of incarceration for aiding and abetting a car jacking, and brandishing a firearm during a crime of violence. In sentencing in this case in May 2006, the district court ordered that Garner serve his seventy-two and 240 month sentences consecutively.

Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Sixth Circuit, which affirmed on April 9, 2008.

On October 6, 2009, Garner filed a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (1:09 CV 2314, ECF No. 1).  Garner alleges his sentence should be vacated on the following grounds: (1) his counsel was ineffective for failure to discuss plea offer; (2) his trial/appellate counsel was ineffective for failure to object, raise impeachment issues; (3) his counsel was ineffective for failing to allow him to testify; (4) his counsel was ineffective for failure to object to application of drug amounts attributable to him; (5) his counsel was ineffective for failing to object or challenge the testimony of Special Agent Lee Lucas, who testified as an expert; and (6) prosecutorial misconduct by violating discovery rules under *Brady v. Maryland* and *Giglio v. United States*.  (Garner Mot. at 5-9; Appendix for Additional Grounds for Relief, 1:09 CV 2314, ECF No. 1-1.)

## II. STANDARD OF LAW

Title 28 U.S.C. § 2255 sets forth four grounds upon which a federal prisoner may base a claim for relief: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  Generally, to prevail on a § 2255 motion alleging a constitutional error, the petitioner must show an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings.  *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993).  To prevail on a non-constitutional error, the petitioner must establish a "'fundamental defect which inherently results in a complete miscarriage of justice', or an error so egregious that it amounts to a violation of due process."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).  Moreover, in order to obtain this form of collateral relief, "a prisoner must clear a significantly higher hurdle than would exist on direct appeal," *United States v. Frady*, 456 U.S. 152, 166 (1982), because "[o]nce the defendant's chance to appeal has been waived or exhausted . . . we are entitled to presume he stands fairly and finally convicted."  *Id.* at 164.

## III. LAW AND ANALYSIS

### A. Ineffective Assistance of Counsel Standard

The Sixth Amendment guarantees all defendants the right to constitutionally effective assistance of counsel.  Counsel is presumed effective; thus, a petitioner has a significant hurdle in establishing ineffective assistance of counsel.  In *Strickland v. Washington,* 466 U.S. 668, 686 (1984), the Supreme Court held:

> The benchmark for judging any claim for ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

To establish that counsel was ineffective, a defendant must prove: (1) that the counsel's performance was deficient; and (2) that the deficient performance prejudiced the defendant. A counsel's performance is deficient when that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id*. at 687.  In determining whether counsel's performance prejudiced the defendant, the defendant must show that the counsel's error "was so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In this regard, the Sixth Circuit has explained:

> The Constitution . . . does not guarantee . . . an excellent lawyer.  It does not even guarantee . . . a good lawyer.  Instead, the Sixth Amendment right to the effective assistance of counsel entitles [a defendant] to nothing more than a "reasonably competent attorney" whose performance falls "within the range of competence demanded of attorneys in criminal cases."

*Moran v. Trippett*, No. 96-2174, 1998 U.S. App. LEXIS 12566, *14-*15 (6th Cir. June 8, 1998) (citing *Strickland*, 466 U.S. at 687)).

### B. Analysis

#### 1. Ground One

On his first ground for relief, Petitioner contends his counsel was ineffective for his failure to discuss the Government's plea offer with him.  Petitioner asserts "Trial Counsel performed deficiently by failing to discuss and give Garner advice regarding whether he should accept the plea offered byt he [sic] government, and failing to bargain for a plea for the charges on which this counsel was appointed to represent Mr. Garner." He admits that he was informed by his counsel of the Government's offer of 10 years, but maintains his counsel never informed him of the benefits of

-6-

this plea, provided the specifics of the plea to him, or advised him on whether he should have accepted the plea. A month later he was indicted on new charges in another case, and Petitioner contends he was offered a new deal by the Government, of 25 years, if he plead guilty in both cases. Garner asserts that when he inquired about the original 10-year offer, counsel told him it was no longer being offered in light of the new charges against him. Petitioner maintains that he told his counsel that he had counsel for the other charges, and was not interested in pleading guilty to those charges. In response, his counsel told him that the only offer the Government was interested in was a plea of guilty in both of his cases. Petitioner contends that since his counsel failed to explain the benefits of the 10-year plea deal, his counsel was ineffective. (Garner Mot. at 5.)

Defendants are entitled to the effective assistance of counsel during the plea process. *Hill v. Lockhart,* 474 U.S. 52, 58 (1985). The *Strickland* analysis also applies to such claims. *Id.* The Sixth Circuit has found petitioners to have a viable Sixth Amendment claim of ineffective assistance of counsel when they allege their counsel encouraged them to reject a plea bargain and go to trial. *Turner v. Tennessee*, 858 F.2d 1201, 1205 (6th Cir. 1988), *vacated on other grounds*, 492 U.S. 902 (1989), *reinstated on other grounds*, 940 F.2d 1000, 1002 (6th Cir. 1991). Such petitioners must prove (1) that his counsel's performance was objectively deficient, and (2) that but for his counsel's erroneous advice, there is a reasonable probability that he would have accepted the plea." *Magana v. Hofbauer*, 263 F.3d 542, 550 (6th Cir. 2001). Garner would need to prove that but for his counsel's advice that he reject the plea deal, he would have plead guilty.

Garner contends that he did not understand the benefits and details of the original plea deal of 10 years. He maintains that he understood he was offered 10 years before he was indicted on the additional charges in a separate case, and then was offered 25 years as a plea deal for both cases.

However, through the Government's disclosures, Garner was informed that, after the second Indictment that due to enhancement triggered by his criminal history, he was subject to a maximum term of life imprisonment. (Information to Establish Prior Conviction, ECF Nos. 267, 291.) Inasmuch as Garner has admitted that he was fully aware of the offer of 10 years, his argument that counsel was not able to persuade him to take that deal is to no avail. Further, he admits that after the second case was filed he was made aware that the Government would only accept a plea of 25 years in respect to the two cases. He clearly admits that he had no intention in pleading to 25 years. In light of these facts, Garner is unable to show his counsel was deficient, and his Motion must be denied on this ground.

2. Ground Two

On his second ground for relief, Petitioner contends his counsel was ineffective for his "failure to object/raise impeachment issues." Petitioner maintains that the court failed to permit cross examination of the Government's witnesses "by impeaching them based upon their prior felony convictions." Petitioner states that the Government had "alleged that the witnesses' prior felony convictions were not federal felonies, based upon the State of Ohio's sentencing scheme for Fifth Degree felonies, which are punishable for up to one year." He asserts that his counsel should have challenged this argument at trial and on appeal, considering one of the Government's cooperating witnesses, Deonta Robinson, had been convicted prior to his testimony, of a Fourth Degree Ohio felony, punishable by up to 18 months of incarceration. Petitioner alleges that "[t]he failure to impeach the cooperating witnesses credibility, and the failure to raise the issue on appeal, caused counsel to provide ineffective representation in violation of Mr. Garner's Six Amendment rights." (Garner Mot. at 6.)

Rule 609 of the Federal Rules of Evidence provides that, generally courts should only allow impeachment of witnesses based on their prior convictions, if the conviction involved a term of imprisonment exceeding one year. The evidence may be admitted though if the court finds the probative value of it outweighs the prejudicial effect. *See McHenry v. Chadwick* 896 F.2d 184, 188-89 (6th Cir. 1990). The district court has "broad discretion in determining whether to admit evidence of prior convictions." *United States v. Lockmondy*, 890 F.2d 817, 824 (6th Cir. 1989).

Prior to trial, the Government did alert the court to the fact that "State of Ohio felony 5 convictions" cannot be used for impeachment purposes because they do not involve a term of imprisonment exceeding one year. (Opp. at 11, 1:05 CR 44, ECF No. 526; Trial Tr. at 198-204, ECF No. 432.) After the Government made this argument, the court addressed defense counsel, and ultimately determined that it would not be proper to question witnesses if they had ever been convicted of a state or federal offense where their prior conviction was a "felony 5." (Trial Tr. at 198-200; Opp. at 12.) The court proceeded to instruct the Government to inform defense counsel of those witnesses. The Government indicated that the first witness this applied to was Sylvester Hudson. (Opp. at 12.) Prior to Jarmaine Green's testimony, the Government informed the court that he did not have an impeachable record. (Trial Tr. at 457, ECF No. 433.) During Maurice Merritt and Robert Heflin's testimony, the jury learned Merritt was previously incarcerated for drugs (*Id*. at 560-61, 576-579), and of Heflin's prior convictions for burglary, attempted robbery, and theft (Trial Tr. at 895-96, 902-905, 950, 963-67, 974-75, ECF No. 435). The jury also learned that Deonta Robinson was currently residing in a federal holding facility at the time of his testimony, and had been convicted in 2003 for failure to comply and possession of cocaine. (Trial Tr. at 380, 384, ECF No. 432.) Defense counsel also questioned Robinson on his felony 4 conviction. (*Id*. at 421-24.)

The record demonstrates that Petitioner's counsel was allowed to question Robinson on his prior convictions. It is also clear that the court did permit cross-examination of the witnesses based on their prior convictions. It was within the court's discretion to determine the extent of questioning allowed on prior convictions, and the court did not err by excluding questioning on felony 5 convictions. *See Lockmondy*, 890 F.2d at 824. Therefore, Petitioner is unable to demonstrate that his counsel's performance was deficient on any of these issues. Accordingly, his Motion must be denied on this ground.

### 3. Ground Three

On his third ground for relief, Petitioner contends his counsel was ineffective for failing to permit him to testify. He states that counsel failed to inform him of his constitutional right to testify, and that the ultimate decision on this issue belonged to him. He maintains that at the close of the Government's case, he asked counsel to call him as a witness, but his counsel refused, and said "I feel it is in your best interest for me not to call you as a wtiness [sic]." Petitioner alleges that he continued to request that counsel call him as a witness, but counsel kept refusing, and stated "I think the defense is in pretty good shape, so therefore I'm sticking with my decision not to call you as a witness." If Petitioner had known of his rights, he contends, he would have elected to testify to the facts stated in his affidavit attached to this Motion, including that he was not in a conspiracy and he had been in a feud with his alleged co-conspirators. (Garner Mot. at 8.)

A defendant's right to testify at trial is "a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the defendant." *United States v. Weber*, 208 F.3d 545, 550 (6th Cir. 2000) (citing *Rock v. Arkansas*, 483 U.S. 44, 52, 53, n.10 (1987)). The right is personal to the defendant, and only he can relinquish this right. *Id*. Defense counsel must "advise

the defendant whether or not the defendant should take the stand, but it is for the defendant, ultimately, to decide." *Id*. at 550-51. Although the defendant makes the ultimate decision, "when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed." *Id*. This assent is presumed because the defendant's attorney is "'strongly presumed to have rendered adequate assistance' in carrying out the general duty 'to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution.'" *Id*. (citing *Strickland*, 466 U.S. at 688-690). The *Weber* court further stated:

> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. At base, a defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.

*Id*. (internal citations omitted).

It was Petitioner's obligation to alert the court in some way that he wanted to testify, and that he disagreed with counsel. As a result of his inaction, waiver is presumed. Without some sort of action from the defendant, "the trial court is neither required to *sua sponte* address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." *Weber*, 208 F.3d at 550 (internal citation omitted). Providing information on what he would have testified to does not relieve Petitioner of his obligation to inform the court that he wanted to testify, and was not being allowed to do so by counsel. In addition to waiver of his right to testify being presumed by his silence, a defendant's

counsel is also presumed to have rendered adequate assistance. Therefore, Garner is unable to show how his counsel's performance was deficient, and his Motion must fail on this ground also.

### 4. Ground Four

On his fourth ground for relief Petitioner raises, he asserts his counsel was ineffective for failing to object to the drug amounts attributable to him. He contends:

> [t]he government failed to find a threshold drug amount in excess of 50 grams of crack cocaine which was foreseeable to Mr. Garner. Mr. Garner submits that the substantive counts of conviction and the testimony presented fail to amount to amounts which Mr. Garner was personally responsible for, thus permitting sentencing by the district court of amounts in excess of the 50 gram crack cocaine mandatory minimum 120 month amount, which was enhanced to 240 months based upon Mr. Garner's prior conviction under 21 USC 851 [sic].

Petitioner maintains that his counsel failed to advance this issue and the applicable case law at trial and on appeal. He states that his counsel also failed to object to the Presentence Report, which contained the amounts erroneously attributed to him. As a result, Petitioner asserts "counsle's omissions and failures in challenging the applicable drug amounts prejudiced Garner, causing a sentence double that which would otherwise be applicable, based upon amounts which were proven to the jury" [sic]. (Garner's Mot. at 9.)

Drug quantities "need only be established by a preponderance of the evidence, and an estimate will suffice." *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008). Co-conspirator testimony can be sufficient to make a determination as to "the amount of drugs for which another coconspirator should be held accountable." *United States v. Warman*, 578 F. 3d 320, 351 (6th Cir. 2009) (internal citation omitted). As the Sixth Circuit noted in its opinion affirming Petitioner's conviction, and referenced above, Petitioner's co-conspirators, an undercover informant, and a detective, provided testimony that aided in establishing the amounts attributable to him. *Garner*, 273

F. App'x at 489. Jarmaine Green testified that he sold Petitioner "eightballs," which are 6.5 to 7 grams, and "quarters," which are 200 grams, and witnessed him selling drugs to people daily on the street. *Id*. Van Evans stated that he sold Garner crack cocaine once or twice a month, from August 2003 to February 2005, in quantities of 7 or 14 grams, and would see him sell to other people. *Id*. at 490. Therefore, this evidence demonstrated that Garner sold more than 50 grams of crack cocaine. His sentence was controlled by the statutory mandatory minimum. Thus, any argument by his counsel objecting to the amounts attributed to him would have been meritless. Since Petitioner cannot show his counsel's performance was deficient, his Motion must be denied on this ground.

### 5. Ground Five

In his fifth ground for relief, Petitioner alleges that his counsel was ineffective for failing to object to or challenge Special Agent Lee Lucas's testimony as an expert witness. Petitioner states that the Government used Special Agent Lucas as an expert in drug culture, language, use, and drug amounts. Petitioner contends his counsel did not object to his testimony "notwithstanding the fact that Lucas testified to specific facts of the investigation of the alleged drug conspiracy as well as an expert, which is not permitted under applicable law." In addition to failing to object to testimony at trial, Petitioner maintains that his counsel also failed to present the issue to the court of appeals in his direct appeal. (Appendix Additional Grounds for Relief, 1:09 CV 2314, ECF No. 1-1.)

The Sixth Circuit has stated that an officer may testify that a particular drug quantity is consistent with the intent to distribute. *See United States v. Combs*, 369 F.3d 925 (6th Cir. 2004). The Sixth Circuit has also stated that an officer can testify as an expert on drug trafficking business and the manufacture and use of crack and powder cocaine. *See United States v. Bender*, 265 F.3d 464 (6th Cir. 2001). Since Special Agent Lucas testified as an expert in drug culture, language, use, and drug amounts, this was appropriate testimony, and in compliance with Sixth Circuit case law. Furthermore, Petitioner's counsel did object to his testimony numerous times. (*See* Trial Tr. at 669-

-13-

70, 673-75, 678-79, 689, 702, 704, ECF No. 433.) Petitioner's counsel made a specific objection to Special Agent Lucas offering expert testimony, stating "I don't know what qualifies him as an expert in this particular area any more than, as I said, Maurice Kennedy who worked Morris Black, who has a better idea of Morris Black." (*Id.* at 678.) The court overruled this objection. (*Id.*) Therefore, Petitioner's counsel did object to the testimony of Special Agent Lucas several times, and his testimony was permitted under the applicable law.

Additionally, Petitioner appears to be arguing that Special Agent Lucas improperly testified as both an expert and a fact witness. The Sixth Circuit has stated that an expert may also testify as a fact witness. *See United States v. Tocco*, 200 F.3d 401, 418-19 (6th Cir. 2000). When Special Agent Lucas testified as a fact witness, Petitioner's counsel objected to this testimony. Petitioner's counsel was concerned about the facts of the case being offered to the jury by Special Agent Lucas, regarding his role in the investigation and his involvement with certain people in the case. (Trial Tr. at 689.) The court overruled this objection and instructed the Government to lay a proper foundation for questioning on this issue. Had Petitioner's counsel raised an argument contending that Special Agent Lucas had improperly testified as both an expert and fact witness, it would have been frivolous. *See Kristi v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986) ("An attorney is not required to present a baseless defense or to create one that does not exist."). Therefore, Petitioner cannot show his counsel was deficient, and accordingly his Motion must be denied on this ground.

### C. Prosecutorial Misconduct

In his sixth ground for relief, Petitioner asserts there was a violation of discovery rules under *Brady v. Maryland* and *Giglio v. United States*. Garner states that "the recent issues concerning Lucas and the current charges pending against him may reveal information held by the government which was not provided to counsel which would have an impact on Lucas's credibility." He contends that "[u]nder Supreme Court case law, defense counsel are entitled to information which

may affect the fact finder's credibility determinations of any witness who testifies at a trial. Garner states that his counsel may not have been given information about Lucas concerning the Mansfield cases," some of which resulted in the dismissal of criminal charges and an indictment against Special Agent Lucas.  He further states that since some of the Mansfield cases "happened prior to Garner's trial, and the government may have had information that counsel was entitled to at trial."  Petitioner asserts that since he was found guilty of being a member in a drug conspiracy, based on the testimony given by Special Agent Lucas on how drug conspiracies operate, his credibility was an important part in the jury finding him guilty of the drug conspiracy.  Had his counsel been able to cross-examine Special Agent Lucas on "other incidents where he lied or set people up as in Mansfield, then Garner argues that there may not have been a guilty verdict on the conspiracy charge, and no 20 year sentence would have been given." (Appendix Additional Grounds for Relief, 1:09 CV 2314, ECF No. 1-1.)

In § 2255 motions, the petitioners bear the burden of proving their claims. *See United States v. Breaton*, 290 F.2d 856, 858 (6th Cir. 1961).  Petitioners must prove their claims by a preponderance of the evidence. *See Pough v. United States,* 442 F.3d 959, 964 (6th Cir. 2006).  In order to assert a *Brady* violation, defendants must make "a sufficient showing of possible merit to warrant a fuller exploration by the district court." *In re Lott*, 366 F.3d 431, 432-33 (6th Cir. 2004) (internal citation omitted).  *Brady* requires the Government to turn over evidence material to guilt or innocence or the punishment of the defendant prior to trial. *Brady v. Maryland*, 373 U.S. 83 (1963).  When making a claim that a miscarriage of justice has occurred, "the evidence must establish sufficient doubt about his guilt to justify the conclusion that [there] . . . would be a miscarriage of justice unless his conviction was the product of a fair trial." *Sculp v. Delo*, 513 U.S. 298, 316 (1995).

Garner contends that had information been known about the Mansfield investigation, it would

-15-

have changed the outcome of his trial. The Mansfield case is not related to the charges brought in Petitioner's case. (Opp. at 22.) The investigation in Petitioner's case "involved controlled buys and drug seizures made in conjunction with arrests that did not involve controlled purchases by Jerrell Bray, the paid informant" in the Mansfield cases. (*Id.*) Petitioner has not provided any evidence that any witnesses in his case gave false testimony against him, as was demonstrated in the Mansfield cases. (*Id.*) Additionally, Special Agent Lucas was ultimately acquitted of the charges against him. (*Id.*)

Petitioner asserts that the Government engaged in prosecutorial misconduct because it withheld this information that his counsel had been entitled to at trial. It is true that the government is responsible for false testimony, even if the prosecutor is not aware of the false testimony. *See Giglio v. United States*, 405 U.S. 150 (1972). However, a conviction will not be set aside unless "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." *Napue v. Illinois*, 360 U.S. 264, 271 (1959). Garner has neither demonstrated that there was any false evidence used to obtain his conviction, nor made a prima facie showing as required by *In re Lott*, of actual innocence based on allegedly withheld evidence. Therefore, he cannot meet the requirements of *Napue* or *Giglio* for relief.

Additionally, Petitioner was convicted on February 24, 2006, and sentenced on May 22, 2006. The Mansfield cases are from an investigation that began in 2005, and Special Agent Lucas's actions were not called into question until 2007. (Opp. at 23.) Thus, there was nothing available to the Government to make available to Garner prior to his trial regarding Special Agent Lucas' conduct. If information had been known to the Government though, and classifiable as *Brady* material, it would have been required to have been disclosed. However, evidence that did not exist at the time of trial is not *Brady* material. *See United States v. Jones*, 399 F.3d 640, 647 (6th Cir. 2005). Therefore, Petitioner cannot make a sufficient showing to support a claim of prosecutorial

-16-

misconduct for failure to disclose exculpatory material, and his claim must also be denied on this ground.

### D. Motion for Default Judgment

Petitioner filed a Motion for Default Judgment on June 29, 2010 (1:05 CR 44, ECF No. 524). He contends that he is entitled to default judgment under Rule 55 of the Federal Rules of Civil Procedure because the Government did not respond to his Motion, and the original response date the court ordered had passed. The court provided a new deadline for the Government to respond by in its July 20, 2010 Order, requiring it to respond within 7 days of the date of the Order. (1:05 CR 44, ECF No. 525.) The Government filed its Response on July 22, 2010.

The Government's initial failure to respond does not automatically entitle Petitioner to relief. Judgments by default in the context of habeas proceedings are disfavored. *See Ramos v. United States*, Nos. 09 Civ. 7938(SAS), 03 CR 724(GEL), 2010 WL 2670823, at *2 (S.D.N.Y. July 2, 2010). Courts have stated that a habeas petitioner must show prejudice in order to prevail on a Rule 55 motion for default judgment based on the Respondent's delay in responding. *Id.* Although the Government filed its Response after the original deadline imposed by the court, Petitioner has failed to demonstrate how he was prejudiced by this delay. In any event, the Government was ultimately in compliance with the court's Order, when it responded prior to the second deadline imposed. Therefore, Petitioner's Motion for Default Judgment must be denied.

### IV. CONCLUSION

The court denies Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (1:09 CV 2314, ECF No. 1). As the court finds that Petitioner's § 2255 Petition is meritless, the court finds that no hearing is necessary. The court also denies Petitioner's Motion

-17-

for Default Judgment (1:05 CR 44, ECF No. 524). Further, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.<br>CHIEF JUDGE<br>UNITED STATES DISTRICT COURT

April 29, 2011